# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

UNITED STATES OF AMERICA,       :
                                                         :
    Plaintiff,                                        :
                                                      :
v.                                                             :     CASE NO.: 1:12-CR-14 (WLS)
                                                       :
BOBBY CHARLES TAYLOR,          :
                                                       :
    Defendant.                                     :
_____ :

## ORDER

Before the Court is Defendant's Motion to Suppress (Doc. 76). For the following reasons, Defendant's Motion to Suppress (Doc. 76) is **DENIED**.

## PROCEDURAL BACKGROUND

On May 11, 2012, Defendant was charged in a two-count Indictment of: (1) conspiracy to possess with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 846 in connection with 21 U.S.C. §§ 841(a)(1) and 846(b)(1)(A)(ii) and (iii); and (2) possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846(b)(1)(A)(ii) and (iii). (Doc. 1.) Defendant filed the instant Motion to Suppress on November 15, 2012. (Doc. 76.) The Government filed its written Response on December 5, 2012. (Doc. 85.) On March 4, 2013, the Court heard arguments on Defendant's Motion to Suppress. Special Agent Luke and Deputy Purvis provided testimony on behalf of the Government. In addition, the Government provided the affidavit and application authorizing the installation of the GPS tracker, as well as Agent Luke's handwritten notes and Deputy Purvis' video recording of the traffic stop. The

1

Court withheld ruling and stated that a written Order reflecting the Court's decision would be issued.

## FINDINGS OF FACT

After carefully considering the testimony, evidence, and arguments of the Parties, the Court makes the following findings of fact:

On March 20, 2012, Georgia Bureau of Investigation agents obtained a court order authorizing the installation of a global positioning electronic tracking device on Defendant's vehicle, a 2005 Chevrolet 1500 SUV, in connection with a drug-related criminal investigation that included Defendant. On March 29, 2012, the data from the tracking device revealed that Defendant's vehicle travelled approximately 175 miles from Albany, GA, to a parking lot of a Target retail store in Atlanta, GA. The vehicle remained in the parking lot for less than half an hour before departing. Upon leaving the parking lot, the vehicle proceeded onto I-285 and traveled almost entirely around Atlanta's perimeter, a distance of over 60 miles, before taking I-75 back towards Albany, GA.

GBI Agent Rhodes contacted the Crisp County Sheriff's Office and asked the Office to initiate a traffic stop on Defendant's vehicle. Deputy Purvis was informed of the drug investigation, the presence of the tracking device, and the details of Defendant's trip to Atlanta. Deputy Purvis testified that he witnessed the vehicle drift from the center lane to the right-hand lane before re-entering the center lane, and initiated the traffic stop at 22:03 for failure to maintain a lane. Defendant stopped his vehicle. Upon making his approach to the vehicle, Deputy Purvis noticed there were no bags or clothing in the vehicle that would indicate a lengthy stay. Upon contacting Defendant, Deputy Purvis asked Defendant to exit the vehicle. Deputy Purvis testified that while he was talking to Defendant, Defendant continuously reached for his pockets.

2

This action led Deputy Purvis to pat Defendant down and feel a large bundle of cash, which Defendant asserted was the result of visiting Atlanta for three or four days, having a good time, and visiting his girlfriend. Deputy Purvis then checked the validity of Defendant's license and prepared a citation for the traffic violation for four minutes. At 22:07:14, Deputy Purvis returned the license and citation to Defendant, and asked Defendant for Defendant's consent to search the vehicle. Defendant did not provide consent and asserted that Deputy Purvis lacked probable cause to search the vehicle. At 22:07:45, Deputy Purvis returned to his vehicle. At 22:08:30, he approached Defendant's vehicle with a K-9 drug-detection dog. At 22:09:23, Deputy Purvis completed his use of the K-9 dog, which had made a positive alert. At 22:11:15, Deputy Purvis began his search of Defendant's vehicle. He later recovered approximately one kilogram of cocaine from the center console of Defendant's vehicle.

Defendant contends that all evidence resulting from the search should be suppressed because the initial stop was pretextual and not supported by probable cause, and because the search of the vehicle exceeded the scope of the traffic violation. The Court now addresses Defendant's arguments.

## **DISCUSSION**

### **I.     Validity of the Initial Traffic Stop**

Defendant argues that Deputy Purvis stopped him not because Defendant weaved across the lanes but as part of "a contrived pretense to be able to affect the traffic stop for the true purpose: because the GBI had called him and told him to stop the car and check it out." (Doc. 77 at 4.) Defendant also argues that the Deputy essentially forced the traffic violation by pulling behind Defendant. At the hearing on the Motion to Suppress, Deputy Purvis testified that as he approached, Defendant's vehicle moved

from the center lane halfway into the right-hand lane before returning to the center lane. Deputy Purvis then initiated the traffic stop for failure to maintain a lane.

"Traffic stops qualify as seizures under the Fourth Amendment." *United States v. Ramirez,* 476 F.3d 1231, 1236 (11th Cir. 2007), *cert. denied,* 551 U.S. 1108 (2007). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810 (1996). Probable cause exists when, under the totality of the circumstances, there is a fair probability that illegal conduct has occurred. *See United States v. Sokolow,* 490 U.S. 1, 7 (1989).

"A driver must maintain a lane of traffic in Georgia." *United States v. $175,722.77, in United States Currency, more or less,* 307 F. App'x 257, 259 (11th Cir. 2007) (citing O.C.G.A. § 40–6–48). Under O.C.G.A. § 40–6–48(1), an officer has probable cause to believe a traffic violation has occurred and can proceed with a traffic stop when a vehicle drives on to the center line of the road. *See Semich v. State,* 506 S.E.2d 216, 218 & n.8 (Ga. Ct. App. 1998) (noting that "weaving out of one's lane justifies a stop" and "constitutes a traffic violation," including "weaving onto the center line"). Here, the uncontroverted testimony establishes that Deputy Purvis had probable cause to believe that Defendant had violated a traffic violation.

Defendant does not contest that he failed to maintain his lane – only that the traffic violation was a "contrived pretense." This contention is unpersuasive. An officer's subjective intentions and opinions are irrelevant where the officer has probable cause for the stop. *United States v. Arango,* 396 F. App'x 631, 632–33 (11th Cir. 2010) ("Where objectively reasonable conditions permit a stop, the officer's motive in

4

making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment."); *Miller v. Harget,* 458 F.3d 1251, 1260 (11th Cir. 2006) ("It is well-settled that an officer's subjective motivations do not affect whether probable cause existed"). That is, "if the driver of a car has broken a traffic law, no matter how relatively minor, a motion to suppress evidence cannot be based on the argument that the stop was pretextual." *United States v. Wright,* No. 2:10–022, 2010 WL 4967468, at *1 (S.D. Ga. Nov. 5, 2010). "Instead, the relevant question is whether it was reasonable for the officer to believe that a traffic offense had been committed." *Id.* (citation omitted). Deputy Purvis' testimony regarding the erratic trajectory of Defendant's vehicle establishes that he had probable cause to believe a traffic violation had been committed, which is all that is necessary to conduct a traffic stop. *Whren v. United States*, *supra*, 517 U.S. at 810. Accordingly, the Court finds that the initial traffic stop of Defendant's vehicle was lawful.

## I.     Scope and Length of the Traffic Stop

Defendant asserts that Deputy Purvis unjustifiably prolonged the traffic stop when he retrieved the K-9 dog and conducted the free-air scan. Defendant argues that the investigation into the traffic stop was complete the moment that Deputy Purvis returned Defendant's insurance and identification information, and that the decision to extend the traffic stop and conduct a separate investigation of Defendant's vehicle using the K-9 canine was not supported by a reasonable suspicion that Defendant was involved in criminal activity.

Because traffic stops are seizures within the meaning of the Fourth Amendment, "an officer's actions during a traffic stop must be reasonably related in scope to the circumstances which justified the interference in the first place" and "the duration of the

traffic stop must be limited to the time necessary to effectuate the purpose of the stop." *United States v. Purcell,* 236 F.3d 1274, 1277 (11th Cir. 2001) (quotation marks and citations omitted). A law enforcement officer conducting a traffic stop may prolong a traffic stop "to investigate the driver's license and the vehicle registration ... by requesting a computer check" and to await "the results of a criminal history check that is part of the officer's routine traffic investigation." *United States v. Boyce,* 351 F.3d 1102, 1106 (11th Cir. 2003) (quotation marks, citations, and footnote omitted); *see also United States v. Hernandez,* 418 F.3d 1206, 1209 n.3 (11th Cir. 2005) (stating that the officer may ask questions—even those unrelated to the initial purpose of the stop—so long as the questioning "does not prolong the time reasonably required to complete that initial mission") (quotation marks, alterations, and citation omitted). "Ordinarily, when a citation or warning has been issued and all record checks have been completed and come back clean, the legitimate investigative purpose of the traffic stop is fulfilled." *United States v. Simms,* 385 F.3d 1347, 1353 (11th Cir. 2004); *see also Boyce,* 351 F.3d at 1107 (stating that once officer "had completed writing the warning citation and returned Boyce's license ... the traffic violation investigation was complete and ... Boyce was free to go"). Where, however, an officer has "an objectively reasonable and articulable suspicion that illegal activity ha[s] occurred or [i]s occurring," he may extend the duration of the stop for further investigation. *United States v. Spoerke,* 568 F.3d 1236, 1248–49 (11th Cir. 2009). "When making a determination of reasonable suspicion, we must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing ." *Simms,* 385 F.3d at 1354 (quotation marks and citation omitted). Reasonable suspicion to justify an extended investigatory detention thus requires more

6

than "an inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* (quotation marks and citation omitted).

Defendant's real bone of contention is not with the length of the stop, but with its scope[1], as he argues that Deputy Purvis lacked any reasonable suspicion that would justify the extra two-minute detention that involved in the use of the K-9. The Court agrees that the use of the K-9 was outside the scope of the initial traffic stop, which was complete when Deputy Purvis returned Defendant's documents with the citation at 22:07. *See Boyce,* 351 F.3d at 1107. Thus, Deputy Purvis was required to have reasonable suspicion to extend the duration of the stop and use the K-9. "When making a determination of reasonable suspicion, we must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Perkins,* 348 F.3d 965, 970 (11th Cir. 2003) (internal citations and quotations omitted). The Court finds that Deputy Purvis had an objectively reasonable and articulable suspicion that illegal activity had occurred based on (1) the information he received from GBI regarding the tracking device on Defendant's vehicle, the drug investigation, and the details of Defendant's trip to Atlanta ; (2) the inconsistency between the information received from the GBI and Defendant's statement that he had been in Atlanta for several days; and (3) the absence of clothing or bags that would corroborate Defendant's assertion that he had been in Atlanta for several days. *See Simms*, 385 F.3d at 1354-55

---

[1]In terms of length alone, the traffic stop was reasonable. Only 45 seconds passed between the return of Defendant's with the citation and the beginning of the K-9 free-air scan, and the scan was complete within two minutes of the issuance of the citation. A total of six minutes passed from the beginning of the traffic stop to the completion of the K-9 free-air scan. The Eleventh Circuit has held that a "detention of fourteen minutes is certainly not unreasonable on its face." *United States v. Purcell,* 236 F.3d 1274, 1277 (11th Cir.2001). A detention of six minutes at most, therefore, is also not unreasonable on its face.

7

(reasonable suspicion existed to justify prolonging initial traffic stop after warning ticket was issued based on receipt of BOLO that stemmed from use of a tracking device, defendant's nervousness, and inconsistency in defendant's story.) While on an individual basis, the inconsistencies may not have been suspicious, the totality of the circumstances supports Deputy Purvis' reasonable suspicion that criminal activity beyond Defendant's failure to maintain a lane was afoot. Accordingly, the Court finds that the extended duration and scope of the traffic stop, which included the K-9 free-air scan, was lawful. As the K-9 alerted on the presence of drugs, the resulting search of the vehicle was supported by probable cause. *United States v. Tamari*, 454 F.3d 1259, 1264-65 (11th Cir. 2006) (probable cause to search a vehicle when there is a fair probability that contraband or other evidence of a crime will be found, and a well-trained narcotics dog that alerts to the presence of drugs establishes probable cause to search a vehicle).

The Court finds that the initial traffic stop was lawful as probable cause existed to believe that a traffic violation had occurred, and that the extended scope and duration of the traffic stop was reasonable and supported by reasonable suspicion. Defendant raises no further challenges in his Motion to Suppress. Accordingly, the Court **DENIES** Defendant's Motion to Suppress (Doc. 76).

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Suppress (Doc. 76) is **DENIED**.

**SO ORDERED**, this  26th  day of July.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**